FRANCISCO VÉLEZ GONZÁLEZ, Appellant, *v.* THE REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. G-62-8.    Decided June 21, 1963.

*Luis López de Victoria* for appellant. The registrar appeared by brief.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The Registrar of Property of San Germán refused to record the sale of a certain real property belonging to the commercial partnership Sucesores de Castañer, *S. en C.*, executed by its managing partner Antonio Ozona Frontera, on the ground that it did not establish "the powers of Antonio Ozona Frontera to appear in the name of the commercial partnership 'Sucesores de Castañer, *S. en C.*' to execute public

deeds alienating real property of that partnership, inasmuch as according to the certificate attached to the document the powers of Ozona as managing partner thereof are limited to the use of the firm name in order 'to purchase and sell native and foreign produce, at wholesale and retail,' for which the said partnership was constituted."

■ The deed of incorporation relied on by the Registrar reads as follows: "The purpose of the partnership is to purchase and sell all kinds of native and foreign *merchandise* and produce at wholesale and retail. Antonio Joy Joy and Antonio Ozonas Frontera shall be the managing partners, and both jointly, or each in his own right, shall use the firm name." (Italics ours.)

Our case law has established that since § 2 of the Code of Commerce of 1885 went into effect in Puerto Rico, the purchase and sale of real property may be considered a commercial transaction, wherefore a contract of this nature entered into by the manager of a commercial partnership who has been authorized to sign the firm name and to execute public instruments is recordable: *Morell* v. *Registrar of Arecibo*, 27 P.R.R. 114, 115–16 (Aldrey) (1919).

The *Morell* case explains that this prohibition of the manager to execute a contract for the purchase and sale of real property stemmed from § 360 of the Code of Commerce of 1829, which expressly provided that the purchase and sale of real property would never be deemed a commercial transaction, "but when the Code of Commerce of 1885 was adopted that article was omitted and its article 2 was so worded as to allow the purchase and sale of real property to be considered a commercial transaction, for it provides that commercial transactions shall be considered those enumerated in the code and any others of a similar character, therefore it cannot now be held that the purchase and sale of real property cannot be deemed a commercial transaction."

As to the purpose of above-mentioned partnership, the General Directorate of Registries considered a very similar phrase in its decision of August 11, 1908, authorizing the registration of a sale of real property. It reads thus: "It stated in the deed of incorporation of that Company that the purpose thereof was 'to purchase and sell all kinds of foreign and native articles' and that the administration would be 'in charge of partner Luciano Ortuño, who is authorized to sign the firm name, to represent the same in court, and to execute in his capacity of manager such deeds and powers of attorneys as may be necessary.' "

The most modern commercial tendency is to consider the acts of alienation as comprised within the powers of managers, in the absence of express prohibition. The learned professor of the University of Madrid, Rodrigo Uría, in his treatise on *"Derecho Mercantil"* (1960), states as follows: "The managers shall have the faculties or powers vested in them by the deed of constitution. The deed may limit the powers of the managing partners and may attribute scope and content to the powers of each of them. *However, in the absence of a covenant, they must be deemed invested with the powers necessary to handle the affairs or business of the partnership and to further the accomplishment of the partnership purpose.* The concept of partnership management exceeds by far the limits of the pure act of civil management. The manager of the partnership may perform not only acts of conservation of the partnership property but also acts of alienation and of assumption of obligations in general; all acts, in short, which may be necessary for the development of the business enterprise come, in the absence of special limitation, within the orbit of powers of those in charge of the management of the partnership." (At 126–27.)

The learned French commentator Georges Ripert, in his *"Tratado Elemental de Derecho Comercial"* (1954), adds: "It is very difficult to determine what is meant by manage-

ment of the partnership. The act of management cannot be characterized here by its juridical nature because it is at variance with the act of disposition, since the manager is obligated to perform acts of this nature as, for example, to sell the unutilizable merchandise or material. Some authors, consistent with a traditional distinction, although outmoded at present, do not permit him to perform juridical acts involving real property, and not only the alienations but also the acquisitions, there being judicial decisions in that sense. However, on this matter the considerations of fact have great weight. Section 1856, par. 1, of the Civil Code (French), confers to the partner in charge of the management of the partnership the right to perform 'all acts which depend on his management, provided they are performed without fraud. These acts are characterized, not by their juridical nature, but *by the purpose sought by the manager.*' We admit that they have the right to sell useless real property, to contract loans, and to acquire useful real property for their partnership." (Vol. II at pp. 123–24.) (Italics ours.)

■  Having examined the purpose for which the partnership Sucesores de Castañer, *S. en C.*, was constituted, "to purchase and sell all kinds of native and foreign merchandise and produce at wholesale and retail," it is not difficult to conclude that the purchase and sale of rural property such as that under consideration was useful for its partnership purposes in the normal traffic of its business. A Registrar of Property will no doubt confront cases in which, after examining the deed of constitution, the extent or restrictions of the powers and the real property operation sought to be recorded, must exercise great care in order to prevent dispositions of real property which, in legal substance, are liquidations of partnership assets rather than alienations within the ordinary traffic of partnership business, without the concurrence of all the partners or in violation of the restrictions on the

power to dispose of real property clearly established in the deed of constitution. However, he must not part from the principle that the business management cannot alienate real property, even though such powers are not clearly conferred by the partnership deed.

As to the contention that the deed of constitution does not authorize the managing partners to execute public instruments, this is what in mercantile law is known as a situation of mere silence in the contract, to be supplied by the applicable legal provisions. In the case of *Morell* v. *Registrar*, *supra*, in which the preamble of the Act of 1885 is copied, it is clearly provided that "the purchase and sale of real property, although it may be termed a commercial transaction, shall be made according to the formalities prescribed in the special laws for acquisition and conveyance of real property" (at 116), that is, by public deed and in accordance with the Mortgage Law of Puerto Rico.

The decision appealed from will be reversed.